[Civ. No. 26721. Second Dist., Div. Four. Aug. 7, 1963.]

SWIFT-CHAPLIN PRODUCTIONS, INC., Plaintiff and Respondent, v. EDWARD H. LOVE, Defendant and Appellant.

William S. Stack and Charles LeRoy Gunther for Defendant and Appellant.

Tyre & Kamins, Richard J. Kamins and Norma B. Raff for Plaintiff and Respondent.

JEFFERSON, J.—Plaintiff brought action in the court below for declaratory relief, seeking a determination by the court that defendant had no right to arbitration of a claim made by defendant for $17,265.59 allegedly due under a contract between the parties, and for an injunction enjoining defendant from proceeding with arbitration. Defendant appeals from a judgment in favor of plaintiff.

Plaintiff, a producer of television commercial films, and defendant, an independent contractor engaged in the business of supplying various types of drawings which are incorporated into animated commercial films, entered into an agreement on February 24, 1956, called the "basic contract" (and referred to herein as such), under which defendant was to deliver to plaintiff animation drawings and layouts for a minimum guaranteed payment of $15,000 for each six-month period that defendant rendered services to plaintiff. The minimum term of the basic contract was for an 18-month period, with a provison for automatic renewals for periods of six months, unless either party gave the other at least 60 days' notice of termination.

Paragraph 11 of the basic contract provided: "Any dispute or difference between us concerning the interpretation, application or enforcement of this agreement shall be submitted to an arbitrator whose decision shall be final and binding upon both parties; and either party shall have the right to have the arbitrator's award entered as a judgment in a court of competent jurisdiction. The arbitrator shall be mutually selected by the parties. If they are unable to agree, then either party may request the American Arbitration Association to select an arbitrator and to have him conduct the arbitration in accordance with its rules and regulations then in effect."

In August 1957, just prior to the expiration of the original

18-month term, plaintiff's and defendant's representatives met, and by oral agreement modified the basic contract. Testimony at the trial presented a conflict as to the nature and effect of this oral modification agreement and as to whether it nullified a minimum guarantee provision of the basic contract.

The contract as so modified was renewed for successive six-month periods until a notice of termination was given by plaintiff on December 28, 1959, and which became effective on February 29, 1960.

Defendant testified that he informed Mr. Harry Hinkle, plaintiff's secretary-treasurer, at the end of each six-month period the contract was in effect, that he demanded payment of the difference between the amount he had been paid during each period, and the $15,000 minimum guaranteed sum mentioned in the basic contract. Defendant, however, never reduced his demands to writing and never submitted to plaintiff a letter or bill requesting payment of the guaranteed amounts until March 7, 1960, one week after plaintiff's notice of termination became effective, at which time defendant made a claim against plaintiff for $17,265.59 as due and owing to defendant for five six-month periods from August 31, 1957, to February 29, 1960.

It is undisputed that defendant made no demand for arbitration of his claim during the period in which the agreement was in effect. Defendant's first demand for arbitration was made on August 25, 1960, approximately six months after the contract had terminated.

Defendant in this appeal challenges the correctness of the trial court's holding that "the agreements between the parties having terminated and no demand for arbitration having been made prior thereto, no right to enforce arbitration now exists, there being no contract then or now existing between the parties."

In holding that defendant's demand for arbitration came too late, the court below based its decision on the case of *Publicists Local 818* v. *National Screen Service Corp.*, 183 Cal.App.2d 491 [7 Cal.Rptr. 238]. There, a union member was laid off by his employer on March 11, 1958. On June 20, 1958, the collective bargaining agreement under which the member was employed, terminated. Between March 11 and June 20, the union member and his union communicated with the employer about the layoff, attempting to obtain an adjustment of the dispute. On June 27, 1958, the employee

was advised that his layoff was permanent. The collective bargaining agreement contained a provision under which all grievances, complaints or disputes relating to working conditions arising under and during the term of the agreement were referable to arbitration. On October 21, 1958, the union, purportedly pursuant to the contract, submitted the dispute for arbitration. The employer refused to arbitrate and the union petitioned the superior court for an order requiring the employer to arbitrate. The district court of appeal, in affirming the superior court's action dismissing the proceedings, stated, as a basis for its decision, that at the time the union requested arbitration there was no enforceable agreement between the parties providing for arbitraton, a requirement which the court held has been repeatedly recognized in California.

However, the decision in the *Publicists* case was reviewed and modified in the case of *Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169, 183 [14 Cal.Rptr. 297, 363 P.2d 313], wherein the Supreme Court referred to a number of prior decisions of the district courts of appeal, including *Publicists, supra,* pointing out that they ''. . . contain some general language and reach results that are not only inconsistent with the federal rules but are inconsistent with the *O'Malley, McCarroll,* and *Weiman* cases. . . .''[1] The court held that ''Any language found in these opinions inconsistent with the three cases above cited, and with this opinion, is disapproved.''

In *O'Malley* v. *Wilshire Oil Co.,* 59 Cal.2d 482, 487 [30 Cal.Rptr. 452, 381 P.2d 188], the Supreme Court, in discussing its prior decision in the *Posner* case, stated: ''In that case [*Posner*] we criticized the prior doctrine of *International Assn. of Machinists* v. *Cutler-Hammer, Inc.* (1947) 271 App. Div. 917 [67 N.Y.S.2d 317]; affd. 297 N.Y. 519 [74 N.E.2d 464]. *Cutler-Hammer* had held that a court could properly reject a petition to arbitrate a matter which, in the court's view, did not compose an arbitrable issue because of petitioner's asserted interpretation of the contract transgressed the plain meaning of the words.

''In *Posner* we described and adopted the ruling of the

---

[1] The cases referred to are the following: *O'Malley* v. *Petroleum Maintenance Co.,* 48 Cal.2d 107 [308 P.2d 9]; *McCarroll* v. *Los Angeles County etc. Carpenters,* 49 Cal.2d 45 [315 P.2d 322]; *Weiman* v. *Superior Court,* 51 Cal.2d 710 [336 P.2d 489].

Supreme Court cases; we said: 'This rule is to the effect that, where the collective bargaining agreement provides for arbitration of all disputes pertaining to the meaning, interpretation and application of the collective bargaining agreement and its provisions, any dispute as to the meaning, interpretation and application of any specific matter covered by the collective bargaining agreement is a matter for arbitration.[2] Doubts as to whether the arbitration clause applies are to be resolved in favor of coverage. The parties have contracted for an arbitrator's decision and not for that of the courts.' (56 Cal.2d at p. 175.) . . . We held that the trial court, instead of confining itself to the issue of whether the dispute was subject to arbitration, improperly passed upon the merits of the issue.''

In analyzing the case of *United Steelworkers of America* v. *American Mfg. Co.*, 363 U.S. 564 [80 S.Ct. 1343, 4 L.Ed.2d 1403], one of the three U.S. Supreme Court cases alluded to in *Posner* as establishing the ''federal rules'' applicable to arbitration provisions, the court in *O'Malley* v. *Wilshire Oil Co.*, *supra*, at page 488, quoting from the *Steelworkers* case, said:

■ ''The Supreme Court stated: 'The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all it connotes that was bargained for.' The court concluded: 'The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant en-

---

[2]The U.S. Supreme Court cases referred to by the court are: *United Steelworkers of America* v. *American Mfg. Co.*, 363 U.S. 564 [80 S.Ct. 1343, 4 L. Ed.2d 1403]; *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574 [80 S.Ct. 1347, 4 L.Ed.2d 1409]; *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593 [80 S.Ct. 1358, 4 L.Ed.2d 1424].

vironment may be quite unaware.' (363 U.S. at pp. 567-568 [4 L.Ed.2d 1406-1407].)''

While the facts of, and the policies underlying the *Posner* and *O'Malley* decisions and the federal cases upon which they rely, would make it possible to limit the application of the rules established in *Posner* to collective bargaining cases, the court apparently did not desire to do so, for in *Posner*, the court expressly relied upon the case of *Weiman* v. *Superior Court*, 51 Cal.2d 710, a non-collective-bargaining case and disapproved language in several other non-collective-bargaining cases.[3]

Applying the rules established in *Posner* to the instant case, we conclude that the trial court improperly held that no right to arbitration existed. The parties clearly could have intended, or manifested the intention in the basic contract, that the arbitration clause would be operative to settle disputes arising out of the contract (and not connected with its termination), whether or not a demand for arbitration was made during the life of the contract. The trial court, in deciding that no right to arbitration existed, of necessity also determined that the parties did not intend to provide for arbitration of disputes arising out of the contract where no demand for arbitration was made prior to its termination.

In the case before us the arbitration clause provided that, ''any dispute or difference between us concerning the interpretation, application or enforcement of this agreement shall be submitted to an arbitrator whose decision shall be final and binding upon both parties.'' Certainly, this language does not expressly require that the demand for arbitration of disputes arising during the term of the contract must be made during such term in order to be arbitrable.

Since, as stated in *Posner*, the contract in this case ''provides for arbitration of all disputes pertaining to the meaning, interpretation and application of the . . . agreement'' we are of the view that the question of whether the parties intended the arbitration clause to be applicable to disputes for which no demand for arbitration was made during the

---

[3]*Case* v. *Alperson*, 181 Cal.App.2d 757 [5 Cal.Rptr. 635]; *Lauria* v. *Soriano*, 180 Cal.App.2d 163 [4 Cal.Rptr. 328]; *Solari* v. *Oneto*, 166 Cal. App.2d 145 [333 P.2d 218]; *Wetsel* v. *Garibaldi*, 159 Cal.App.2d 4 [323 P.2d 524]; *J. H. Pomeroy & Co.* v. *Soulé Steele Co.*, 156 Cal.App.2d 691 [320 P.2d 172]; *Straus* v. *North Hollywood Hospital Inc.*, 150 Cal.App. 2d 306 [309 P.2d 541]; *Crofoot* v. *Blair Holding Corp.*, 119 Cal.App.2d 156 [260 P.2d 156]; *Bierlein* v. *Johnson*, 73 Cal.App.2d 728 [166 P.2d 644].

term of the contract, being a question of interpretation, should have been left to the arbitrator together with the other problems of interpretation of the basic and modified agreements discussed in the briefs. Furthermore, as pointed out in *Posner, supra,* (p. 175), "Doubts as to whether the arbitration clause applies are to be resolved in favor of coverage." The judgment is reversed.

Burke, P. J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 1, 1963.